PEOPLE *v.* FLACZINSKI.

1. SEARCHES AND SEIZURES—INTOXICATING LIQUORS—AFFIDAVITS—SUFFICIENCY—TRESPASS.

Statements by affiant, in an affidavit before a magistrate for a search warrant, that he was at the premises of defendant on certain dates and that then and there he smelled the odor of mash and moonshine whisky, *held*, sufficient to give the magistrate jurisdiction to issue the warrant and that they gave rise to no inference that affiant was a trespasser or unlawfully upon defendant's premises.

2. SAME—JURISDICTION TO ISSUE SEARCH WARRANT NOT LOST BY PROOFS ALIUNDE.

The affidavit under which the search warrant was issued being sufficient to give the magistrate jurisdiction to issue it, jurisdiction was not lost by proof *aliunde* that the affiant had verified the previously discovered facts of the presence of mash and moonshine whisky upon defendant's premises while upon the highway by thereafter going upon the premises and knocking upon the door and incidentally locating, by the odor, the small building from whence it came.

Exceptions before judgment from Jackson; Parkinson (James A.), J. Submitted June 15, 1923. (Docket No. 118.) Decided July 19, 1923.

Louis Flaczinski was convicted of violating the liquor law. Affirmed.

*J. Adrian Rosenburg* and *Frank L. Blackman*, for appellant.

*John Simpson*, Prosecuting Attorney, and *Harry E. Barnard*, Assistant Prosecuting Attorney, for the people.

SHARPE, J. Defendant was convicted in the Jack-

Complaint or information based on information and belief as the basis for the issuance of a warrant is discussed in notes in 10 L. R. A. (N. S.) 159; 25 L. R. A. (N. S.) 60.

son county circuit court under a charge in the information filed against him that on January 17, 1923, and divers other preceding dates he unlawfully had in his possession intoxicating liquor, "to wit: Four gallons of moonshine whisky." He seeks reversal on exceptions before sentence. Under authority of a search warrant officers visited premises occupied by defendant where they found and seized evidence of his guilt which his counsel sought to suppress by a preliminary motion made in time and form to save the question for review. The motion was denied. The information contained two counts, one charging unlawful manufacture and the other unlawful possession of intoxicating liquor. At conclusion of the people's testimony both parties rested. On motion of defendant's counsel the prosecution was required to elect between counts, and the prosecuting attorney elected to go to the jury under the second count, which charges unlawful possession. But one claimed error is urged in defendant's brief, stated as follows:

"The sole question is: If an officer go unlawfully and as a wilful trespasser in the dead of night to a dwelling house and premises and make a search thereof and if he used the information discovered in this illegal search to obtain a search warrant, is the evidence seized in the subsequent search made by virtue of said search warrant admissible in evidence against the respondent? Counsel maintain that the affidavit made by Marsh on which the search warrant was issued, shows on its face that he was a trespasser and on the premises without legal right, that it therefore conferred no jurisdiction on the justice to issue the search warrant and the subsequent search was therefore illegal."

Defendant resided upon a farm located on "Sutton road" in Leoni township, Jackson county. Marsh was a member of the State constabulary stationed at the city of Jackson in said county. The affidavit which

he made before the magistrate was in legal form, and states the grounds of affiant's belief as follows:

—"that on the above described premises are certain buildings; that is a dwelling house, barn, sheds and other outbuildings; that the premises above described are farm premises; that on the evenings of January 13th and 15th and 16th, A. D. 1923, I was at said premises and up near to said buildings, and that then and there I could smell the odor of mash and moonshine whisky coming from said building or some of them, that mash is a concoction out of which moonshine whisky, an intoxicating beverage so-called, is manufactured; that I am familiar with the smell of mash, having smelled considerable quantities of it and also of moonshine whisky, and that what I smelled as alleged aforesaid was mash and moonshine whisky."

The odor of intoxicating liquor or of mash for its manufacture furnishes sufficient probable cause to authorize the issuance of a search warrant and to justify officers under certain circumstances in the belief that a felony is being committed. *People* v. *Warner,* 221 Mich. 657; *United States* v. *Borkowski,* 268 Fed. 408; *United States* v. *Rembert,* 284 Fed. 1002.

Counsel for defendant do not question the sufficiency of this affidavit to authorize issuance of the search warrant, aside from the contention that the incriminating facts stated in it were obtained by a trespass upon defendant's private premises.  When Marsh first detected the odor of mash and moonshine whisky, with which he was familiar, coming from the buildings on defendant's premises he was out in the highway near by them.  He did not go upon the premises at all until the evening of January 16th, which was his third visit.  He testified that he then first walked up the Sutton road and stood outside the fence for a while, then walked to the side door of the house near the rear and rapped on the door, heard

some talking and laughing inside but saw no one, and after standing there for a short time went back out on the road.    On that night he satisfied himself the odor came from a small building or shed.    On cross-examination he was asked and answered:

"And when you say in your affidavit that you were 'at the premises and up near the buildings' you are referring to the time you were actually on the premises.    Is that correct?

"*A.* No, except in so far as that one occasion when I was at the back door.

"*Q.* That was on the 16th?

"*A.* That was on the 16th.    *   *   *

"*Q.* What you smelled on the night of the 16th of January was mash and moonshine whisky?

"*A.* Yes, sir.    I say that from my experience as an officer.    I saw no moonshine whisky there on the night of the 16th.    I saw no mash there either or a still, nor jugs or bottles.    I did not go near the barn on any of the three nights.    I did not go within 20 feet of the shed.    The shed is directly west of the house   *   *   *   about 20 feet."

On the following day, January 17th, he made the affidavit on which the search warrant was issued and in the afternoon accompanied county officers to defendant's place to serve it.    They reached there about 3:30 p. m. and read the warrant to defendant, who got up out of bed when they arrived at the house, and explained he had been up the night before.    They found on the premises moonshine whisky in a glass jug and a crockery jar.    In the shed was a boiler filled with mash which was yet warm.    Further back in the shed they found under some sacks a board cover to the entrance of a dug-out running back under a chicken coop and in the dug-out barrels of mash and an oil stove with its burner lit.    Under-sheriff Daniels testified that he "saw the still, mash, stove and cooler in the dug-out under the chicken coop.    The still was warm and the stove going."    As to his

previous alleged trespass to obtain this information Marsh was asked on cross-examination and answered:

"Now, when you went there on the 17th, you went into the shed?

"*A.* Yes, sir; Mr. Daniels, the under-sheriff went with me. That is the first place we went. I did know where it was. I went right there.

"*Q.* You knew where it was from your previous observations?

"*A.* Why, yes; from the odor of the mash. When I was there the night of the 16th the odor came directly from this shed."

The facts stated in the affidavit gave the magistrate jurisdiction to issue the search warrant. Affiant's statement in it that he was "at said premises up and near" the farm buildings upon it, gives rise to no inference that he was a trespasser or unlawfully upon said premises. On the first two occasions he was not upon the premises at all. To detect an incriminating odor wafted from there could scarcely be claimed a trespass. On the third occasion he invaded the premises only to the extent of walking to the side door of defendant's home and knocking on the door at about 7 or 7:30 in the evening. After standing there for a short time and getting no response he left; he went away without disturbing anything or anybody. To go to the door of a private residence at a seemly hour in an orderly manner and rap upon the door is customarily recognized as a request for permission to enter or speak to some one within, rather than a wilful trespass in invasion of the sacred privacy of the home. If he went there and rapped for admission as a prospective customer for some of the product he had smelled he required no search warrant before opening negotiations, even if his object was to secure evidence of a violation of the law. *People* v. *Christiansen*, 220 Mich. 506. He was guilty of no invasion of defendant's home or any of the buildings upon the

premises. That his purpose was to get further evidence that liquor was being unlawfully manufactured upon said premises is conceded, but in carrying out that purpose he touched nothing on the premises but the ground under his feet and the door at which he knocked for admission, and the only evidence he secured was through his sense of smell by which he successfully located the source of the incriminating odor he detected, as subsequent events showed.

The officers had a search warrant fair upon its face when they made search of the premises and seizure of the evidence sought to be suppressed. The affidavit under which it issued was sufficient to give the magistrate jurisdiction to issue it. Jurisdiction was not lost by proof *aliunde* that the affiant had verified the previously discovered facts therein stated by his sense of smell, while later upon defendant's premises. *People* v. *Czckay*, 218 Mich. 660; *vide*, also, *People* v. *Woodward*, 220 Mich. 511.

The conviction will stand affirmed, and the case is remanded for such further proceedings as the trial court may determine.

WIEST, C. J., and MCDONALD, CLARK, BIRD, and MOORE, JJ., concurred. FELLOWS and STEERE, JJ., did not sit.