JENNIE AYDELOTTE, RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.

Argued October 17, 1939—Decided January 25, 1940.

For the appellant, *Starr, Summerill & Lloyd* (*Alfred E. Driscoll,* of counsel).

For the respondent, *Joseph T. Sherman* (*Harry Grossman,* of counsel).

The opinion of the court was delivered by

PARKER, J.   The suit is on an ordinary life policy with additional death benefit in case of death by accident.   The primary claim was paid, but the payment of accident benefit refused, the Company claiming that the death was by suicide. That issue went to the jury, whose verdict for the plaintiff beneficiary may fairly be regarded as a finding that suicide was not proved.   The present appeal is based on two alleged trial errors.   The first is that the court refused to direct a verdict for the defendant; the second, that the court refused the following request to charge:   "In view of the fact that

there is evidence that the death of Walter Aydelotte [the insured] resulted from self destruction, there is no presumption against the fact of his suicide."

By the terms of the policy the additional death benefit was payable on "due proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means, provided * * * (5) that death shall not have been the result of self destruction, whether sane or insane. * * *"

The deceased was in a motor car where the road crosses the double track of a railroad line. No one was with him in the car. According to the testimony of one witness, deceased had stopped his car about twenty-five feet short of the tracks, alighted, raised the hood of the car, and when the witness saw him the hood was up and the man was wiping his hands with some cotton waste. Asked whether he needed help, he replied in the negative. Another witness for plaintiff, called in rebuttal, said she saw him "having trouble with his car * * * the front wheels were distinctly off the east [further] side of the tracks" as the train hit his car. He was killed by the collision of a train with the standing car.

The defendant-appellant in its answer set up the proviso in the policy about self-destruction (which with the omissions indicated, we reproduce from the answer) and averred that the death was the result of self-destruction. This was the determinative issue at the trial. The court, in charging the jury, instructed them that the plaintiff had the burden of proving not only the violent death, but also that death was not the result of self-destruction. The question whether this instruction was correct is not specifically before us, which is just as well, for the policy, though of course in evidence, is not printed, and the excerpt embodied in the answer shows by asterisks that it is far from complete. We do not wish to be understood as subscribing to the view that where the policy contract calls for liability under prescribed conditions, and also contains a proviso negativing liability under certain other conditions, the burden is on the insured or the beneficiary to prove that the proviso does not apply. The cases seem to hold, generally, that the burden of proving suicide

is on the insurer. 37 *C. J.* 618; *Kresse* v. *Metropolitan, &c., Co.,* 111 *N. J. L.* 474. (*Contra, New York Life Insurance Co.* v. *Gamer,* 303 *U. S.* 161.)

Taking up the defense of suicide: It was in evidence that deceased was estranged from his wife, who lived in another state; that he had been living with another woman, but that they had separated; and the principal piece of evidence for the Company on the issue of suicide was a note or letter in the handwriting of deceased, some three pages long, written apparently at two different times. This was found in, or with the wallet of deceased at the place of, and immediately after, the accident. Like the policy, it is not printed as an exhibit, though so marked, but was read to the jury. While it does not say in plain language that he intended to commit suicide, it does ask that his body be cremated, and the thought of suicide is clear enough, though as to time and method there is not a word or even a hint. Based on this note, and on the circumstances of the accident, together with some testimony touching the illicit relations of deceased with the woman to whom the note was apparently addressed, counsel for defendant company moved for a direction of a verdict for defendant on the ground that as a court question the presumption against suicide had been nullified and a case of suicide had been established incontrovertibly by the evidence. The motion was denied, and the argument here is (quoting the language of the brief) that "It may be conceded that there is a legal presumption against suicide and that this presumption, coupled with other proofs which may be submitted, make out a *prima facie* case in a suit of this kind. While this is true, it is nevertheless a clearly established law in this forum that a presumption is not evidence and that the aid of a presumption may be invoked only to establish a *prima facie* case to entitle the party carrying the burden of proof, in the absence of the presumption being overcome, to the jury or to require his opponent to go forward with evidence." The authorities relied on are *Domanowski* v. *Prudential Insurance Co.,* 116 *N. J. L.* 247, and *Dunn* v. *Goldman,* 111 *Id.* 249. In the Dunn case, a Supreme Court decision, the rule stated in the second headnote is that "the

value of evidence necessary to meet a presumption is entirely in the hands of the trial court." Accepting this for present purposes, the question remains, whether in the case at bar the trial court erred in refusing to hold that the evidence was sufficient to meet the presumption. We do not think there was error in that regard. The evidence as to what happened at and near the railroad crossing before and at the time of the collision, and apart from the paper-writing, could properly be held by the jury as showing simply a case of negligence in attempting to cross in front of an oncoming train, even when the latter was in plain sight. Such cases have been all too common; a good example is *Burnett* v. *Easton and A. Railroad Co.,* 61 *Id.* 373. Such attempts to outrun a railway train may be described as suicidal, but are not classified otherwise than as negligence. In the present case there was evidence which, if believed, would support a finding that deceased had trouble with the motor, alighted, raised the hood, did something, closed the hood and started across the track, the car stopping after the front wheels were across. Were this all, a claim of intentional suicide would have little or no foundation. The suicide theory rested on the paper-writing and the inference that because it was written by deceased and was found in his wallet, he had determined to die by stopping his car in front of a railway train if that happened to be a convenient way to meet death. To direct a verdict for defendant, the court would be required at the least, and as a court question, to tie up the paper-writing to the collision, and remove from the jury any function of finding facts and conclusions therefrom. The court declined so to do, and we cannot say that this was legally erroneous. In the language of the Supreme Court of the United States in *New York Life Insurance Co.* v. *Gamer,* 303 *U. S.* 161, 168, "defendant was not entitled to a mandatory instruction."

The second ground of appeal, as already noted, is based on the alleged refusal of a request to charge. Here again the state of the case ignores the rules of this court, for while the requests of plaintiff, with which we are not concerned, are printed, those of defendant are not printed. It is quoted above, however, the language being taken by us from the

stenographic transcript of the exception to the refusal. We assume also that the request was proffered in writing and at the proper time, and though technically it might well be disregarded, we prefer to treat the point on the merits.

A careful reading of the request, "In view of the fact that *there is evidence* [italics ours] that the death　*　*　* resulted from self destruction, there is no presumption against the fact of his suicide," will, as we think, make it plain that it went too far, and hence was properly denied. If charged, it would have required a verdict for defendant if there was any evidence of suicide, no matter how slight. But we think the true rule is well stated in the text of 37 *C. J.* 619, as follows: "This presumption against suicide, however, is rebuttable, and does not prevail where clear and definite evidence of suicide is produced; or where there is no evidence indicating an accident, *and* the facts point strongly to suicide or where it is shown that insured was insane."

The present case is not in either of these classes. A good example of the first, as well as of the second, is the case of *Domanowski* v. *Prudential Insurance Co., supra,* in this court. That was the simple case of insured, who had exhibited a "gun" in the course of a saloon argument, leaving the saloon and entering his car. Shortly afterwards three shots were heard; and he was found dead at the wheel of his car, an automatic pistol in his hand and several bullet wounds in his body. There was no evidence of accident; and there was clear and definite evidence of suicide. We held, in substance, that plaintiff, claiming death by accident, was not entitled to a presumption based solely on the finding of the body, and ignoring the patent facts of the wounds, the pistol, &c., that death was accidental. In the present case there was admittedly a violent death; there was some evidence to support an inference that it was accidental, and some evidence to support an inference that it was intentional. In such a situation the Domanowski case is not controlling. Just how much evidence of suicide is required to forestall or overcome any presumption of accidental death reasonably deducible from proved facts and the fundamental improbability of suicide, we are not now required to decide.

We find no legal error, and the judgment will therefore be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, HAGUE, JJ. 12.

*For reversal*—THE CHIEF JUSTICE, CASE, HETFIELD, RAFFERTY, JJ. 4.